IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SUE LACAPRUCIA, individually and on behalf of all others similarly-situated, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 4:20-cv-00849-BCW |
| v. | ) ) | |
| SAUNDRA THURMAN-CUSTIS, et al., | ) ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' RENEWED MOTION
FOR PRELIMINARY SETTLEMENT APPROVAL**

The parties have reached an agreement to settle this case. The settlement is fair, reasonable, and beneficial to the class members and should be readily approved. The settlement creates a common fund of $75,000 to cover all payments to Class Members, as well as a service award to the Class Representative and all attorney's fees and costs. Every single class member who does not opt out of the settlement will receive a payment, and no settlement monies will revert to the Defendants. The settlement represents a reasonable balance of the risks and delays faced by class members should this case proceed in litigation, and is in the best interests of class members. The Court should preliminarily approve the settlement, and direct notice to the class.[1]

---

[1] The Court has already preliminarily approved the settlement, but this renewed motion for preliminary approval is being filed to facilitate compliance with CAFA's notice provisions.

1

## I. Facts and Procedural History[2]

This case centers on alleged non-payment of 401(k) contributions to a group of food service workers at Whiteman Air Force Base. This present action commenced in the Circuit Court of Jackson County, Missouri, and follows a related action also assigned to this Court against Crystal Enterprises, Inc. The history of this action is set forth on the Court's docket. Defendants removed this action to this Court, and the parties engaged in preliminary motion practice, including a motion to dismiss. The parties also engaged in documentary discovery. As part of the Court's mediation program, the parties proceeded to mediation with Joseph Knittig, Esq. Following a lengthy mediation, further discussions, and exchange of drafts, the parties reached a final settlement.

The settlement agreement is attached and filed with the Court. The settlement creates a common fund of $75,000. Of this, $50,000 will be set aside to pay class members. Payments will be in equal shares to all participating Class Members. The named Plaintiff, Sue "Shelly" LaCaprucia, would receive a service award of $2,500. Finally, attorney's fees, expenses, and costs would be paid in the amount of $22,500. Participating Class Members would release all claims, and all pending litigation would be dismissed with prejudice.

## II. Question Presented

Should the Court grant Plaintiffs' motion to approve the settlement of this case and certify the settlement class when the settlement is fair, reasonable and provides an

---

[2] This factual and procedural history is based on the materials contained on the Court's ECF docket, unless otherwise noted.

2

immediate, significant benefit to the class members, and ends contested litigation prior to trial or ruling of a dispositive motion?

**III. Argument**

**A.     Approval of the Opt-Out Class Settlement**

Fed R. Civ. P. 23(e) requires a Court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); ; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004) (noting "the universally applied standard is whether the settlement is fair, adequate and reasonable"). Whether a settlement warrants approval is within the trial court's sound discretion, *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).  In making this determination, the Court considers "the settlement, taken as a whole," rather than its component parts. *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1333 (E.D. Mo. 1995) ("[I]t has been recognized that 'the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'") (citing *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002). During the first step, counsel submits

3

the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the settlement does not contain obvious deficiencies or grounds to doubt its fairness, the Court should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to final approval of the settlement (the second step). *See* Manual § 21.633. At the preliminary stage, the question is "whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

"Courts considering [class action] settlements do so in light of the strong presumption of favoring compromise of disputes generally, but which "is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *1-2 (D. Kan. Oct. 26, 2012), quoting *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1188 (10th Cir. 2002). More importantly, however, is that there are no "obvious deficiencies" in the fairness of this settlement, or other reasons to doubt it will

4

meet the Tenth Circuit's requirements for final approval. See *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (quoting Manual for Complex Litigation (Third) § 30.41 (1994)).

### 1. The Proposed Settlement Enjoys an Initial Presumption of Fairness

"The law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting that it is especially true in "a protracted, highly divisive, even bitter litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)).

5

Case 4:20-cv-00849-BCW    Document 65    Filed 09/27/21    Page 5 of 16

## 2. Analysis of the Applicable Factors Favors the Settlement

Before approving a settlement, courts must consider the following four factors:

(1) Whether the proposed settlement was fairly and honestly negotiated;

(2) Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) The judgment of the parties that the settlement is fair and reasonable.

*Hersey*, 2012 WL 5306260, at *1 (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)); *Jones*, 741 F.2d at 324; *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Because the parties' settlement of this Litigation satisfies each of the four prerequisites, the Plaintiffs respectfully ask the Court to preliminarily approve the Rule 23 settlement and permit notice to be sent to the Class.

**1. The settlement was fairly and honestly negotiated.**

The parties engaged in motion practice and discovery in this case. At mediation and after, Counsel discussed the possibility of a resolution, and were able to reach a resolution. Following extensive arm's length negotiations, the parties were able to reach a settlement in principle.

"The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion

6

that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, Civil No. 05-cdv01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008) (unpublished) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)). The settlement was honestly and fairly negotiated by competent counsel. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

The Class's counsel believe the settlement provides substantial benefits to the Class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Furthermore, when compared with similar litigation, the relief to the class is substantial. Moreover, Defendants believe the settlement is fair and reasonable, as evidenced by their willingness to settle this case.

**2. There are serious questions of law and fact that affect the outcome of the litigation.**

The parties have "reasonably conclude[d] that there are serious questions of law and fact that ... could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation. See *Lucas v. Kmart Corp*, 234 F.R.D. 693-694 (D. Colo. 2006); *Ashley v. Reg'l Transp. Dist.*, No.05-CV-01567-WYD-BNB, 2008 WL 384579, at * 18 (D. Colo. Feb 11, 2008) ("doubt augurs in favor settlement because settlement creates a certainty of some recovery" (quoting *In re Qwest Int'l, Inc. Sec. Litig.*, Civil Case No.

7

01-cv-01451-REB-CBS, et al., 2006 U.S. Dist. LEXIS 71039, at *16-*17 (D. Colo. Sept. 28, 2006) (unpublished)).

The risk of an adverse finding against the Class is significant; if this matter did not settle, the Class would face a substantial risk of no recovery at all should the Court or a jury agree with Defendants' defenses. Even if the Court and/or jury rejected these defenses, the Class would also have faced substantial risk on the amount of damages depending on the value of unpaid benefits and any related damages and losses. Thus, settlement is favored as to the uncertainty of dispositive motions, a trial, and appeals.

## 3. The value of immediate recovery outweighs the possibility of relief years from now.

The monetary value of the settlement must be compared with "the possibility of some greater relief at a later time, taking into account the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelleti*, 536 U.S. 1 (2002). When weighed against the potential relief gained, and the expense of the litigation, the $75,000 common fund is more than sufficient. A settlement for a case that would be litigated for several more years is satisfactory. *See, e.g., Garcia v. Tyson Foods, Inc.*, 890 F.Supp.2d 1273 (D. Kan. 2012) (involving five years of litigation through trial and another two years on appeal). Furthermore, even if there were a trial, there is no certainty the Class would have achieved a positive outcome. For this very reason, most class actions settle. As one court aptly observed, it is sometimes better "to take the bird in the hand instead of the

8

prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and quotations omitted).

If the parties had not settled, this matter would have proceeded through motion to dismiss and/or summary judgment practice. Plaintiffs would have needed to obtain class certification as well. There may have been significant discovery, additional dispositive motions, and possibly motions for decertification. Whatever remained of the action would have been tried on the merits. If the Court did not certify a class, subsequently decertified a class, or granted dismissal or summary judgment in Defendants' favor, Class members would recover nothing. And, even if the case proceeded to trial, substantial legal questions and complicated factual issues affecting potential recovery by Plaintiffs and Class members would have required resolution. The uncertain disposition of the Litigation, as well as these unresolved questions, created substantial complexity and concordant risk for the Plaintiffs and the class, thus weighing in favor of recovery as guaranteed by the parties' proposed settlement.

### 4. Counsel believe the settlement is fair and reasonable.

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed.1997)).

9

The firm of Keenan & Bhatia, which is proposed as class counsel, has been litigating the issues in this case for years, both in this case and a related case. The parties reached this settlement after arms-length negotiations; both "genuinely believe" it represents a good outcome for all parties. *In re Sprint*, 443 F. Supp. 2d at 1261. Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson*, 2011 WL 5822413, at *3–4 (crediting counsel's belief that the settlement was fair, reasonable, and adequate). Here, the class had the benefit of attorneys who are experienced and familiar with the facts and law in the case. Likewise, the Defendants retained experienced counsel who could successfully navigate complex litigation in the ERISA context.

Against this background, counsel's opinion "is entitled considerable weight" and supports approval of the settlement. See *Ashley*, 2008 U.S. Dist. LEXIS 13069, at *21 (quoting *Lucas*, 234 F.R.D. at 695); *Marcus*, 209 F. Supp. 2d at 1182-83.

### 5. The Opinions of Class Members

Although at this preliminary stage, notice and opportunities to accept or otherwise respond to the settlement have not been provided to class members, each class member who does not exclude themselves from the settlement will receive payment. No monies will revert to the Defendants. All class members will have the right to exclude themselves from the settlement if they choose. Thus, the settlement allows for class members to opt out if they do not like the settlement.

## IV. The Court Should Approve the Requested Service Award

Plaintiffs seek a service payment for the named Plaintiff, Sue "Shelly" LaCaprucia, who provided invaluable service to the group. This service provided necessary evidence for the parties, counsel, and the Court, furthering the interests of the class as a whole. The Named Plaintiff requests an award of $2,500 in recognition of her service to the class as a whole through litigation. Named Plaintiff worked with Class Counsel before and throughout this litigation in pursuing these claims on behalf of class members, including responding to written discovery, attending mediation, providing documents, reviewing pleadings, and consulting with counsel on strategy and settlement.

The award requested here is modest and reasonable. Courts recognized that the risk, time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical class member is receiving, and have approved service awards far larger than the one requested here. *See Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for the three class representatives); *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two and a half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of

11

litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation); *Flores v. Anjost Corp.*, 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards for five named plaintiffs in FLSA settlement after three years of litigation); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award to named plaintiff in tip pool case settlement after three years of litigation); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award for named plaintiff in tip credit case settlement after two years of litigation).

The underlying events here occurred around a decade ago. Ms. LaCaprucia has been dedicated to pursuing recovery for her coworkers for many years now. She has shown extraordinary dedication and patience in working to the benefit of her coworkers. Accordingly, Plaintiff's request falls within a fair range of service awards.

**V. Plaintiffs' Application for Fees & Expenses Should be Approved**

As part of the settlement, Plaintiffs request $22,500 for payment as attorneys' fees, expenses, and costs, and Defendants agree not to oppose such request. Such fees and expenses are reasonable. This represents approximately 30% of the common fund – which is well in line with (and on the lower end of) the typical fee percentage sought.

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so because Defendant has agreed that it will

12

not oppose up to $22,500 of the Settlement Fund as attorneys' fees, expenses, and costs. The Parties in this matter have also agreed to a common fund settlement.

When, as here, a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). This common fund doctrine is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough,* 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).[3] This Court has recognized attorney fees are appropriately awarded from a class action settlement fund, "on the theory 'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.' " See *In re: Urethene Antitrust Litigation*, 2016 WL 4060156, at *4 (D. Kan. July 29, 2016) (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Importantly, all Class members who willingly choose to participate will do so (1) after they are informed via the Court's approved notice that $22,500 of the common fund will be paid as fees, and (2) with the opportunity to object to the requested

---

[3] Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency, and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery. *See In re Xcel Energy,* 364 F.Supp.2d at 993, 996; *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986). Third, use of the percentage method decreases the burden imposed on the Court by the "lodestar" method, and assures class members do not experience undue delay in receiving their share of the settlement. Courts have recognized using a percent of the fund approach most closely aligns the interests of the lawyers with the class because the greater the recovery, the more the attorneys may receive in fees. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting the percentage of the benefit approach has been recommended in common fund situations).

13

fees. The Eighth Circuit approves of the percentage-of-the-fund method. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting the percentage of the benefit approach has been recommended in common fund situations).

Courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (quoting *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14, 2009) (approving 33% of fund) (Smith, J.); *Busler v. Enersys Energy Products Inc., Case* No. 09-0159, Docs. 111 & 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.,* Case No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Brown v. Time Warner Cable, Inc.,* Case no. 13-0353-CV-W-BP (W.D. Mo. March 3, 2014); *Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D. Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%); *Burks*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33 1/3% attorney's fee award in call center wage and hour claim); *Wolfert*, Case No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p.2 & Doc. 38, p.4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *EEOC v. Fairbault Foods, Inc.,* Civ. No. 07-3976, 2008 WL

14

879999, at *4, 2008 U.S. Dist. LEXIS 29132, at *13 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement fund); *Carlson,* 2006 WL 2671105, at *8, 2006 U.S. Dist. LEXIS 67108, at *22 (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case no.: 07-1535 (E.D.Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%), *Staton v. Cavo Communications, Inc.*, Case no.: 08-0273 (E.D.Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%) *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case).

Class counsel has been pursuing recovery for these class members for years now, both in this case and the related case. The dockets of both cases reflect the amount of work that has gone into this result; even before those cases were filed, Class Counsel was working to try and achieve a recovery without litigation, with no certainty of a recovery, A fees-and-costs award of $22,500 is reasonable, modest, and appropriate for Class Counsel's work.

## CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement. Plaintiffs, therefore, respectfully request that the Court approve the settlement.

15

Dated: September 27, 2021      Respectfully submitted,

KEENAN & BHATIA, LLC

__/s/ Sonal Bhatia & E.E. Keenan_____
Sonal Bhatia, Mo. Bar No. 67519
Edward (E.E.) Keenan, Mo. Bar No. 62993
4600 Madison Ave., Ste. 810
Kansas City, MO  64112
Tel:  (816) 809-2100
sonal@keenanfirm.com
ee@keenanfirm.com

*Attorneys for Plaintiff Sue LaCaprucia*

## CERTIFICATE OF SERVICE

I certify that, as of the date of filing, I served the foregoing by CM/ECF, which will automatically transmit a copy to all participants of record.

__/s/ E.E. Keenan_____
An Attorney for Plaintiff